FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 26, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>     -vs-<br><br>PETER JAMES YEAGER,<br><br>                              Defendant. | No.    2:21-CR-0001-WFN-1<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

An evidentiary hearing was held March 20 through March 21, 2024. The Defendant, who is not in custody, was present and represented by Colin Prince and John McEntire, IV; Assistant United States Attorney Patrick Cashman represented the Government. This hearing was set to determine whether Mr. Yeager must be committed to the custody of the Attorney General. Mr. Yeager will not be committed for the reasons explained below.

A bench trial was held on February 5, 2024. Prior to the bench trial, the parties submitted a stipulation of facts and conclusions of law. ECF No. 111. The parties agreed that Mr. Yeager maliciously damaged, destroyed, or attempted to damage or destroy the Teamster Building in Spokane, Washington, by means of fire or explosives, and that the building was used in interstate commerce or an activity affecting interstate commerce. *Id.* However, the parties also agreed that Mr. Yeager had a severe mental disease or defect that prevented him from appreciating the nature and quality, or the wrongfulness, of his acts. *Id.*[1] The Court indicated at the bench trial that it would accept the parties' stipulation but did not enter a verdict at that time.

---

[1] Both Mr. Yeager's expert, Richard Adler, M.D., and the Government's expert, Nathan Henry, Psy.D., agreed with this conclusion. ECF No. 111.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 1

The Court does so now and finds that Mr. Yeager maliciously damaged, destroyed, or attempted to damage or destroy the Teamster Building in Spokane, Washington, by means of fire or explosives, and that the building was used in interstate commerce or an activity affecting interstate commerce. The Court also finds that Mr. Yeager had a severe mental disease or defect that prevented him from appreciating the nature and quality, or the wrongfulness, of his acts. Therefore, the Court finds Mr. Yeager not guilty by reason of insanity.

"If a person is found not guilty only by reason of insanity at the time of the offense charged, he *s*hall be committed to a suitable facility *until* such time as he is eligible for release." 18 U.S.C. § 4243(a) (emphasis added). A person found guilty by reason of insanity is eligible for release if he proves "his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." § 4243(d). Because Mr. Yeager's offense involved serious damage to the property of another person and a substantial risk of bodily injury to another person, he has the burden of proof by clear and convincing evidence. *See id.*

After the bench trial, the Court appointed Robert Cosby, Psy.D., to examine Mr. Yeager and report his findings to the Court and to the parties. ECF No. 122. Dr. Cosby was requested to report, among other things, his opinion on whether Mr. Yeager is suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. *Id.* Dr. Cosby has since submitted his report to the parties and to the Court. The report is thorough. It describes Mr. Yeager's history and present symptoms, the tests Dr. Cosby performed, the results of those tests, Dr. Cosby's findings, and Dr. Cosby's opinions. Ultimately, Dr. Cosby opined that Mr. Yeager does not pose a substantial risk of bodily injury to another person, or serious damage of property of another, due to a persistent mental disease or defect.

Dr. Cosby testified at the evidentiary hearing on March 20, 2024. His testimony was consistent with his report. He described at length his experience and qualifications, the tests he administered, the results of those tests, his conclusions, and the reasons for his

conclusions. Dr. Cosby testified Mr. Yeager suffers from a mental disease or defect caused, in part, by multiple traumatic brain injuries. Although Mr. Yeager's disease or defect is still present, he is not currently suffering from its effects. In other words, Mr. Yeager's mental ailments have not been cured, but he is no longer symptomatic. Dr. Cosby credited transcranial magnetic stimulation therapy for Mr. Yeager's recovery. It is important for Mr. Yeager to stay engaged in treatment, and Dr. Cosby believes Mr. Yeager will do so because he has an excellent support network and, critically, good insight into his mental health issues. According to Dr. Cosby, a person's insight is the most important factor affecting whether they will stay engaged in treatment. On cross examination, Dr. Cosby agreed that the risk of Mr. Yeager causing harm will increase if Mr. Yeager stops attending treatment. However, Dr. Cosby did not agree the risk would increase so much that it would become substantial. And because Dr. Cosby believed Mr. Yeager was unlikely to stop attending treatment, he ultimately concluded there was not a substantial risk of Mr. Yeager causing harm.

The Court accepts Dr. Cosby's conclusion. Dr. Cosby is highly qualified. He has a doctorate in psychology. He has been a forensic psychologist for the State of Washington for six years and has evaluated dangerousness in hundreds of cases. His examination and report were both thorough, and his conclusions were consistently supported by multiple measures. Dr. Cosby also appeared to be honest and unbiased. Dr. Cosby readily admitted Mr. Yeager's release presented *some* risk, though Dr. Cosby believes that risk is not substantial considering the high likelihood Mr. Yeager will continue his treatment. Dr. Cosby was confident in his ultimate conclusion and said the case was not close.

Mr. Yeager also testified. He was polite and well spoken. He answered questions completely and truthfully, and he was not at all evasive or combative. Mr. Yeager spoke frankly about his mental illness and their effects, and he acknowledged the seriousness of his actions. He also spoke about the treatment he has received and how immensely it has improved his mental health. Mr. Yeager has good insight into his own mental health and understands that he will need treatment for the rest of his life. Mr. Yeager now has stable housing, a good support network, and full VA benefits, all of which will help him stay

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 3

engaged in treatment. None of those things, however, are as important as Mr. Yeager's own personal insight and commitment to treatment. Mr. Yeager's demeanor and highly credible testimony support the Court's conclusion.

Based on the witnesses' testimony and Dr. Cosby's report, the Court finds by clear and convincing evidence that Mr. Yeager's release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect.

This Order is entered to memorialize and supplement the oral rulings of the Court. Accordingly,

**IT IS ORDERED** that:

1. The parties' Stipulation of Facts and Conclusions of Law, filed January 30, 2024, **ECF No. 111**, is **ACCEPTED**.

2. The Court **FINDS** that Mr. Yeager is **not guilty by reason of insanity**.

3. The Court **FINDS** that Mr. Yeager's release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect.

4. Mr. Yeager shall **NOT** be committed to the custody of the Attorney General.

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 26th day of March, 2024.

_____
WM. FREMMING NIELSEN
SENIOR UNITED STATES DISTRICT JUDGE

03-19-24

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 4